**Armand R. GASBARRO, Plaintiff-Appellant,**

v.

**LEVER BROTHERS COMPANY et al., Defendants-Appellees.**

No. 73-1009.

United States Court of Appeals, Seventh Circuit.

Heard Oct. 30, 1973.

Decided Dec. 21, 1973.

Edwin A. Strugala, Chicago, Ill., Wilczynski, Wilczynski, Ciambrone, Karwoski & Petrarca, Chicago Heights, Ill., for plaintiff-appellant.

Francis D. Morrissey, John T. Coleman, Thomas F. Tobin, Don H. Reuben, Steven P. Handler and Lawrence Gunnels, Chicago, Ill., for defendants-appellees.

Before SWYGERT, Chief Judge, and CUMMINGS and STEVENS, Circuit Judges.

CUMMINGS, Circuit Judge.

This diversity action is based on tortious interference with a physican-patient relationship and on slander. Plaintiff is a podiatric physician practicing in Lansing, Illinois. Defendant Lever Brothers employs numerous persons at its Hammond, Indiana, plant. Defendant Kruglinski is its Personnel Manager there. Defendant Travelers Insurance Company is the insurer under a medical benefits policy insuring Lever Brothers' employees. Under a union contract, Lever Brothers agreed to a medical benefits program for its employees. As a result, Lever Brothers arranged for the policy with Travelers. The insurer agreed to pay the "usual, reasonable and customary" cost of hospitalization and medical care, including foot surgery. Lever Brothers' premium for the group benefit health insurance policy consisted of reimbursing Travelers for all benefit payments, plus a percentage overcharge. The cost to Lever Brothers would thus in part depend on the medical fees.

Count I, based on tortious interference with a business relationship, alleged that Kruglinski disparaged plaintiff at an August 11, 1970, meeting at Lever Brothers' Hammond plant, attended by union representatives and others. Kruglinski told the group that plaintiff was not a member of the American Medical Association and charged Lever Brothers' employees excessive fees. Kruglinski said that consequently the employees would have to pay the uninsured portion of the fees. Defendants assertedly advised Lever Brothers' employees to seek care from members of the American Medical Association. Plaintiff sought $50,000 for defendants' inducing Lever Brothers' employees not to enter into physician-patient relationships with him. In Count IV, an additional $50,000 was sought as punitive damages for the same tort.

Count II, the defamation count, claimed that the statements that plaintiff's charges were excessive were false and made recklessly or maliciously. Compensatory damages of $100,000 were sought, and in Count III, $50,000 punitive damages were claimed for the defamation. By virtue of summary judgment in its favor, Travelers was not involved in the trial of Count II.

Plaintiff admitted he had sometimes received complaints from insurance companies and patients about his fees. He still treats Lever Brothers' employees, and his income has been increasing yearly. His counsel conceded he could not prove specific damages.

At the conclusion of the jury trial, the district court rendered an oral opinion in favor of defendants. As to Counts I and IV dealing with interference with business relationship, the court said there was insufficient evidence of actual damage or interference with the professional relationship to permit the case to go to the jury. The court held that in any event there was a conditional privilege and that the plaintiff had not adduced the requisite evidence of actual malice.

As to Counts II and III charging defamation, the court held that the case was governed by New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, and Farnsworth v. Tribune Co., 43 Ill.2d 286, 253 N.E.2d 408 (1969). *Farnsworth* was cited for the proposition that "an osteopath is regarded as a public figure on whom a comment may be made under first amendment protection." The district court found podiatrists indistinguishable from osteopaths. Since the kind of malice required to recover damages under the doctrine of those cases was not shown, a verdict was directed on the defamation Counts as well as on the business relationship Counts.

[1] Although Kruglinski's allegedly false statements were made in Indiana, the parties have treated this diversity case as governed by Illinois law, because any injury to plaintiff was suffered in that state. In a tort action for interference with contract or other business relationships, or for defamation, if the alleged wrongful conduct is conditionally privileged, a plaintiff must show actual malice on the part of defendant in order to sustain his cause of action in Illinois. Arlington Heights National Bank v. Arlington Heights Federal Savings and Loan Ass'n, 37 Ill.2d 546, 551, 229 N.E. 2d 514 (1967); Lulay v. Peoria Journal-Star, Inc., 34 Ill.2d 112, 115, 214 N. E.2d 747 (1966); Zeinfeld v. Hayes Freight Lines, Inc., 41 Ill.2d 345, 349, 243 N.E.2d 217 (1969); Doremus v. Hennessy, 176 Ill. 608, 52 N.E. 924, 54 N.E. 524 (1898); Restatement of Torts,

§§ 593–605, 766–770. Plaintiff's principal brief in this Court recognizes the validity of this rule where a conditional privilege exists.

We agree with the district court that defendants' conduct was conditionally privileged. As the district court pointed out at the conclusion of plaintiff's case, defendants' activities were "because of their desire to protect their employer's legitimate interest in keeping the expenses of the health and welfare policy down, and what they did they did in defense of that interest and not through a desire to inflict harm upon the plaintiff." The standards for a qualified or conditional privilege were defined as follows in *Zeinfeld, supra,* a defamation case:

"Where circumstances exist, or are reasonably believed by the defendant to exist, from which he has an interest or duty, or in good faith believes he has an interest or duty, to make a certain communication to another person having a corresponding interest or duty, and the defendant is so situated that he believes, in the discharge of his interest or duty or in the interests of society, that he should make the communication, and if he makes the communication in good faith, under those circumstances, believing the communication to be true, even though it may not be true, then the communication is qualifiedly or conditionally privileged, even though the defendant's interest or duty be not necessarily a legal one but only moral or social and imperfect in character." 41 Ill.2d at 349, 243 N.E. at 221.

The same conditional privilege standards were applied in *Arlington Heights National Bank, supra,* an interference with contract case.

The evidence revealed that Dr. Francis D. Kenney, Lever Brothers' Hammond plant physician, had informed Kruglinski that plaintiff's medical fees consistently appeared to run high. Therefore, Kruglinski talked to employee Mary Merola, who was scheduled for foot surgery to be performed by plain-

tiff. Kruglinski asked Mrs. Merola to have an orthopedic surgeon examine her in order to determine a fair professional fee. Later Kruglinski told a representative of Travelers and Lever Brothers' Plant Manager that plaintiff proposed to charge her a $1,000 fee whereas Dr. Schneider, who had examined Mrs. Merola, proposed to charge only $400.* At a subsequent monthly meeting with Lever Brothers' union officials, the insurance and medical benefit program was discussed, and Kruglinski truthfully stated that plaintiff was not a member of the American Medical Association and added that he "charges atrocious or outrageous prices."

■ This evidence presents no jury issue as to malice. Kruglinski's statements were made in good faith, based on Dr. Kenney's opinion and Dr. Schneider's estimate. Kruglinski had no reason to doubt the opinion of two doctors. He was upholding Lever Brothers' interest in minimizing the cost of the medical payments that it bore. Since the employee benefits were rendered pursuant to a union-management contract, and since in extreme cases employees would have to pay the excessive portion of the charge themselves, it was normal for such questions to be discussed at a meeting between union and management representatives. Thus there was no excessive publication.

If the issue were the truth of Kruglinski's statements, there might have been a jury question. But the issue is whether Kruglinski acted maliciously. Since there is no evidence that he did, his qualified privilege could not have been overcome. The directed verdict was therefore proper as to all counts, for no contrary verdict based on this evidence could ever stand. Pedrick v. Peoria & Eastern R. R., 37 Ill.2d 494, 510, 229 N.E.2d 504 (1967).

This resolution of the issues makes it unnecessary to decide whether the rule of New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, and Farnsworth v. Tribune Co., 43 Ill.2d 286, 253 N.E.2d 408 (1969), is applicable. For discussions of the applicability of the *New York Times* rule in somewhat related situations, see Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 91 S. Ct. 1811, 29 L.Ed.2d 296, and Gertz v. Robert Welch, Inc., 471 F.2d 801 (7th Cir. 1972), certiorari granted, 410 U.S. 925, 93 S.Ct. 1355, 35 L.Ed.2d 585.

Judgment affirmed.

---

* Because of his lower fee, Mrs. Merola had Dr. Schneider operate on her feet.