ROBERT J. JACOBS, Plaintiff-Appellant, *v.* GASOLINE RETAILERS' ASSOCIATION OF METROPOLITAN CHICAGO *et al.*, Defendants-Appellees.

(No. 59622;

First District (3rd Division)—April 17, 1975.

James F. Flanagan, of Halfpenny, Hahn & Roche, and Sidney Z. Karasik, both of Chicago, for appellant.

Michael J. Merlo, of Pretzel, Stouffer, Nolan & Rooney, and Joseph B. Lederleitner, both of Chicago, for appellees.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

This is an action for libel. The plaintiff, Robert Jacobs, was the business manager of the defendant, Gasoline Retailers' Association of Metro-

8

politan Chicago from October 25, 1968, to March 12, 1969. In March 1969 the association sued Jacobs for an accounting and a judgment for $4,435.24 was obtained against him on March 1, 1972. The result was reported in the March 1972 issue of the "Gasoline Dealers News," a magazine published by the association, and Jacob's picture was printed on its cover:

ILLINOIS

*GASOLINE DEALERS NEWS*

MARCH, 1972     Volume 25     ⬛➤572     NUMBER 3

GASOLINE RETAILERS' ASSOCIATION
𝔪𝔢𝔪𝔟𝔢𝔯
OF METROPOLITAN CHICAGO
SERVICE • UNITY • QUALITY

*CHICAGOLAND HAPPENINGS!*
Page 4

•

Official Publication
of the
GASOLINE RETAILERS
ASSOCIATION
OF METROPOLITAN CHICAGO

•

ILLINOIS RETAIL GASOLINE
DEALERS ASSOCIATION

•

WANTED!

from
ROBERT (Bobby) JACOBS
$4,435.24!

See Page 14

The reader was directed to "See Page 14." On page 14 was an article describing the outcome of the litigation followed by a verbatim copy of the decree.

Jacobs sued the association, its executive director Eugene Albano, and its general counsel Charles Porcelli. His complaint asserted that by the format used on the cover and the accompanying article, the defendants sought to depict him "as a bandit and criminal" and that the article describing the outcome of the civil proceedings "exceeds the bounds of propriety and the limited privilege accorded defendants by law, and is in effect a false, scandalous and malicious libel on plaintiff." The defendants moved to dismiss the complaint on the ground that it alleged no falsity and asserted libel through innuendo contrary to the innocent construction rule. They also contended that the complaint, which did not allege that the plaintiff had suffered special damages, was defective in that the publication was not libelous per se and therefore was not actionable without averment and proof of special damages. The trial court sustained the motion and dismissed the complaint.

On appeal the plaintiff points to two statements in the article on page 14 which he asserts are not completely correct, but basically he limits his charge of libel to the cover format. This statement in his reply brief summarizes his position: "It is not the 'report of the judicial pleadings' which is alleged to be false and maliciously presented. It is the front cover photograph which is alleged to be false and malicious in its implication that plaintiff was found guilty of wrongfully taking money in connection with the civil accounting action." The plaintiff argues that while the words on the cover do not say that he was wanted for theft or embezzlement, the format used for the words and for his picture "insinuates a crime as if explicit words were employed."

■■ Written or printed words that falsely charge one with the commission of a crime are libelous per se. (*Lorillard v. Field Enterprises, Inc.* (1965), 65 Ill.App.2d 65, 213 N.E.2d 1.) The words need not state the commission of a crime in terms of art or with the particularity of an indictment. *Zeinfeld v. Hayes Freight Lines, Inc.* (1968), 41 Ill.2d 345, 243 N.E.2d 217.) Words are libelous per se when their publication is so obviously and naturally hurtful to the person aggrieved that proof of their injurious character is unnecessary. *Reed v. Albanese* (1966), 78 Ill.App.2d 53, 223 N.E.2d 419.

The plaintiff cites the case of *Wisher v. City of Centralia* (1933), 273 Ill.App. 168, to show that the format used on the cover was designed to suggest to readers of the magazine that the plaintiff was a criminal. In *Wisher* the defendants posted the plaintiff's name in a rogue's gallery in the Centralia City Hall. The reviewing court stated that the natural and

probable consequences of placing the plaintiff's name in the rogue's gallery were that he would be shunned as unworthy of the confidence of his fellowmen, suspected if outlawry occurred, given a bad name and subjected to distrust. In *Wisher* there was nothing to distinguish the plaintiff's name from the other names posted in the gallery.

In this case there is only a general similarity between the picture on the cover of the magazine and a criminal-wanted poster. The cover says "Wanted! *from*," not "Wanted *for*." It states that the plaintiff is wanted for a sum of money, not for a crime. The format undoubtedly calls the reader's attention to the picture, but it also calls his attention to all the words near the picture and directs him to an inside page for further information. Taken as a whole the publication is more susceptible to an innocent construction than not.

The innocent construction rule holds that words allegedly libelous must be read as a whole and in their best possible sense and if they are capable of an innocent construction they must be declared nonactionable at law. (*John v. Tribune Company* (1962), 24 Ill.2d 437, 181 N.E.2d 105, *cert. denied,* 371 U.S. 877 (1962); *Hambric v. Field Enterprises, Inc.* (1964), 46 Ill.App.2d 355, 196 N.E.2d 489.) The determination as to whether language is susceptible of an innocent construction is a question of law for the court. *Zeinfeld v. Hayes.*

The trial court did not err in finding the publication not libelous. Its order dismissing the complaint is affirmed.

Affirmed.

McNAMARA and MEJDA, JJ., concur.