SAMUEL T. WEXLER, Plaintiff-Appellant, *v.* CHICAGO TRIBUNE COMPANY *et al.*, Defendants-Appellees.

First District (5th Division)    No. 78-1316

Opinion filed March 16, 1979.

Paul M. Heller, of Wexler, Wexler & Heller, Ltd., of Chicago, for appellant.

Reuben & Proctor, of Chicago (Don H. Reuben, Lawrence Gunnels, and Samuel Fifer, of counsel), for appellees.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiff, an attorney, appeals from the dismissal of his complaint against the Chicago Tribune Company, the Chicago Tribune and two reporters, Jerry Thornton and Philip Wattley, alleging that a news article published in the Chicago Tribune on or about October 4, 1977, was libelous. On appeal, plaintiff contends that the complaint is sufficient to sustain a cause of action for libel in that it sets forth sufficient factual allegations and properly pleads special damages. We affirm.

The article which is the basis of plaintiff's claim reads in its entirety as follows:

### "ATTACK LEFT MAN DANGLING 14 FLOORS UP
#### By Jerry Thornton and Philip Wattley

What really happened in a predawn true-life melodrama high over the loop?

Did someone really try to throw a wealthy beer truck driver off a 16th-floor fire escape, or was it all a misunderstanding?

After two days of investigating the incident at the Bismarck Hotel building, police decided Wednesday to turn the case over to the state's attorney's office for unraveling.

Meanwhile Henry Lazewski, 55, who gave his address as the Elmwood Park Hotel, was home from the hospital nursing a dandy set of bruises; and Raymond Schultz, 46, 8605 W. 86th St., Justice, was charged with attempted murder. He is to appear Tuesday in Felony Court.

Police said the incident began early Monday morning in the office of attorney, Samuel T. Wexler, 70.

Police Sgt. George Owen, of the Area 1 homicide unit, said a security guard and a window washer in the Bismarck rescued Lazewski as a man in a dark suit with a bright flowered shirt was attempting to hurl him off the fire escape.

Schultz, wearing only a T-shirt and dark trousers, was found a short time later in a 10th floor washroom. The flowered shirt was recovered from the roof of a parking garage next to the hotel.

Schultz was identified by Lazewski as his assailant.

Owen said Lazewski, a beer truck driver, who inherited a large sum of money from his mother, told police his fortune had dwindled from $800,000 to $200,000 after he turned his financial affairs over to Wexler's management.

Lazewski said he went to Wexler's 18th floor office in the Bismarck to discuss the matter at 6 a.m. Monday.

Lazewski told police that as he stood in Wexler's office, admiring the early morning view from the exit to the fire escape, he felt a blow on the head and fell to the metal grating.

The next thing he knew, Lazewski said, Schultz was beating and kicking him, and the two tumbled down two flights to the 14th-floor level, with Lazewski 'hollering all the way.'

The guard and window washer, alerted by the cries for help, told police they found Lazewski hanging out over the fire escape and his assailant kicking his hands.

The assailant fled, and the rescuers pulled Lazewski in through a 14th-floor window.

Citywide homicide commander, Joseph DiLeonardi said Wexler told detectives that it was Lazewski's normal habit to come to his office between 6 and 6:30 a.m. every day and give him some Polish bread. In exchange, the attorney said, he would give Lazewski cigars.

On Monday he told detectives he met Lazewski outside the building just as Schultz also was arriving. The three rode an elevator up together and he and Lazewski talked in an inner office, Wexler said, while Schultz, for whom Wexler is handling a divorce matter, waited outside.

Wexler said Lazewski has been disturbed on several occasions over the dwindling of his funds. When Lazewski brought the matter up again, Wexler said, he told him, 'Well, I'm rather busy now, so why don't you go down to the end of the hall and take a look at the moon?'

According to DiLeonardi, Wexler said that Lazewski walked to the end of the hall and was apparently followed by Schultz, at which time the altercation occurred."

Plaintiff alleges, *inter alia*, that the article leads readers to believe that he "had committed malfeasance and/or malpractice" in managing Lazewski's funds; that plaintiff was "in some way connected with, or an accomplice to," the attack on Lazewski; and that plaintiff had acted unprofessionally and in violation of certain canons of ethics in his practice of law.

Defendants filed a motion to dismiss, claiming that the article is nonactionable under the rule of innocent construction and that plaintiff had not pleaded special damages in his complaint. The trial court granted the motion to dismiss and plaintiff has appealed.

### Opinion

■■ Before considering the sufficiency of plaintiff's pleadings, we must first determine whether the words in defendants' article are actionable as a matter of law, by applying the rule of innocent construction which was announced by the Illinois supreme court in *John v. Tribune Co.* (1962), 24

Ill. 2d 437, 181 N.E.2d 105, *cert. denied* (1962), 371 U.S. 877, 9 L. Ed. 2d 114, 83 S. Ct. 148. According to the court, the innocent construction rule holds:

> "* * * that the article is to be read as a whole and the words given their natural and obvious meaning, and requires that words allegedly libelous that are capable of being read innocently must be so read and declared nonactionable as a matter of law." (24 Ill. 2d 437, 442, 181 N.E.2d 105, 108.)

The words are to be read stripped of innuendo (*Zeinfeld v. Hayes Freight Lines, Inc.* (1968), 41 Ill. 2d 345, 347-48, 243 N.E.2d 217, 220; *Van Tuil v. Carroll* (1972), 3 Ill. App. 3d 869, 279 N.E.2d 361), with the words taken in their best possible sense (*Jacobs v. Gasoline Retailers' Association* (1975), 28 Ill. App. 3d 7, 10, 328 N.E.2d 187, 189; *Hambric v. Field Enterprises, Inc.* (1964), 46 Ill. App. 2d 355, 196 N.E.2d 489), and each case must be decided on its own facts. *Korbar v. Hite* (1976), 43 Ill. App. 3d 636, 639, 357 N.E.2d 135, 137, *cert. denied* (1977), 434 U.S. 837, 54 L. Ed. 2d 98, 98 S. Ct. 127.

■■ Applying these principles to each of plaintiff's claims, we conclude that, as a matter of law, the article cannot support a claim for libel, for none of the charges alleged by the plaintiff can be found in the article.

■■ First, the article does not, as plaintiff maintains, impugn his ability and integrity as an attorney, either by charging him with mismanagement of Lazewski's finances or by accusing plaintiff of acting unprofessionally and violating canons of ethics. Plaintiff focuses on the statement that Lazewski's fortune had "dwindled from $800,000 to $200,000, after he turned his financial affairs over" to plaintiff's management. The "dwindling" of Lazewski's fortune is in no way attributed to actions of the plaintiff and could as easily have resulted from disappointing investments, a shaky economy, or some other factor beyond plaintiff's control. Even taken out of context, then, the statement is readily susceptible to an innocent construction.

Furthermore, this innocent construction is borne out by a reading of the article as a whole. The emphasis of the article clearly is not on the state of Lazewski's finances. Only one other reference to Lazewski's money appears in the article. According to the article, plaintiff acknowledged that he was aware of Lazewski's concern about the funds, and when Lazewski brought the matter up, plaintiff told him he was "rather busy" and that Lazewski should "go down to the end of the hall and take a look at the moon." While the scenario is not particularly flattering to plaintiff, there is no comment anywhere which questions the propriety of plaintiff's acts, and, more importantly, plaintiff does not deny making the statements attributed to him. The situation described in the article is a far

cry from making a statement such as "you could not have chosen a worse attorney," which was found to be actionable in *McGuire v. Jankiewicz* (1972), 8 Ill. App. 3d 319, 290 N.E.2d 675.

■ Nor can we agree with plaintiff's contention that the article implicates him in the attack on Lazewski. The article describes an altercation between two of plaintiff's clients, one of whom was subsequently charged with attempted murder. While Lazewski said he had been hit on the head while in plaintiff's office, the article states elsewhere that plaintiff had said that the other man had apparently followed Lazewski down the hall, at which time the fight occurred. The article does not even remotely imply that plaintiff was "in some way connected with" the attack other than by the fact that the two men involved were his clients and had gone to plaintiff's office at the same time. Clearly, no criminal action has been imputed to plaintiff.

In light of the foregoing, we find that the article can be innocently construed and is therefore nonactionable as a matter of law. Because of this conclusion, it is unnecessary for us to consider plaintiff's contention regarding the pleading of damages.

Accordingly, the order of the circuit court of Cook County dismissing plaintiff's complaint is affirmed.

Affirmed.

SULLIVAN, P. J., and WILSON, J., concur.