THOMAS M. WELCH, Plaintiff-Appellant, v. CHICAGO TRIBUNE COMPANY et al., Defendants-Appellees.

(No. 60427; )

First District (2nd Division)—October 28, 1975.

*Rehearing denied January 14, 1976.*

Richard J. Aronson, of Chicago, for appellant.

1048

Kirkland & Ellis, of Chicago (Don H. Reuben, Lawrence Gunnels, and John W. Conniff, of counsel), for appellees.

Mr. PRESIDING JUSTICE DOWNING delivered the opinion of the court:

Thomas M. Welch (plaintiff) filed a complaint for libel against the Chicago Tribune Company and Cooper Rollow, Tribune sports editor (defendants). The circuit court of Cook County granted defendants' motion for summary judgment.

The only issue before this court on appeal is whether the trial court erred in granting the motion for summary judgment.

In considering defendants' motion for summary judgment, the trial court had before it plaintiff's complaint, defendants' answer, plaintiff's reply, defendants' answers to plaintiff's interrogatories, and briefs by both plaintiff and defendants on the issues of law involved in the case. The briefs in this court referred to facts established by depositions taken in preparation for this case, but the depositions were not filed with the trial court until after the motion for summary judgment had been granted. No affidavits were filed respecting the motion for summary judgment. In a post-judgment order permitting the filing of the depositions, the court denied a motion for rehearing of the summary judgment motion. Plaintiff appeals.

This court shall consider all matters of record, including the depositions filed after the motion for summary judgment was granted.[1] These include depositions of plaintiff (Thomas Welch), defendant (Cooper Rollow) and two assistant editors of the sports department (Ted Anthony Damata and David Moylan). There has been no objection to a consideration of these depositions on this appeal, and both plaintiff and defendants have referred to these depositions in their briefs before this court.

The undisputed facts disclosed by the pleadings and depositions on file in this case are as follows. Plaintiff was employed by the sports department of the defendant newspaper from October, 1963 to August, 1970. In August of 1970, plaintiff's position with the sports department was terminated by a letter delivered to him and signed by Cooper Rollow (defendant), sports editor. After notifying plaintiff of his termination, defendant Rollow, in consultation with two of his associate editors, posted

---

[1] Supreme Court Rule 366(a)(3) (Ill. Rev. Stat. 1973, ch. 110A, par. 366(a)(3)) grants the appellate court the power to "* * * order or permit the record to be amended by correcting errors or by adding matters that should have been included."

a memorandum notifying the members of the sports department of the reasons for plaintiff's termination. The memorandum read:

"Aug. 7

Tom Welch's services have been terminated as of this date because of alcoholism, inefficiency, lack of punctuality, and unreliability.

(signed)
Cooper Rollow"

This memorandum was posted on a bulletin board at the edge of the sports department. A few minutes after the memorandum was posted an unidentified person, not a member of the sports department, passed by the bulletin board, read the memorandum and laughed. This incident caused Rollow to remove the memorandum from the board and put a copy of it in the mailbox of each person connected with the sports department. Persons with mailboxes in the sports department included not only regular employees, but phone boys and stringers.[2]

Plaintiff's complaint denies the truth of the statements made in the memorandum and alleges plaintiff was told his termination was the result of economic conditions. Plaintiff further alleges defendants knowingly published these false statements with malice and an intent to injure plaintiff. Plaintiff alleges he was injured in his reputation and suffered actual damages of $100,000 and prays for additional exemplary damages of $100,000.

In their answer defendants admit the posting and distribution of the memorandum, but they deny the allegation plaintiff had been told his termination was the result of economic conditions; they further deny the memorandum was false and defamatory and that it was published with an intent to injure plaintiff; they also allege the memorandum was privileged and nonactionable; the information contained in the memorandum was true; the information was never communicated to anyone other than Tribune employees, thus there was never an actionable publication; the language of the memorandum was protected by the guarantees of free speech; and the complaint failed to state a claim on which relief could be granted.

Plaintiff filed a reply denying all of the defenses alleged in defendants' answer.

After answering interrogatories, defendants moved for summary judg-

---

[2] As we understand the record, stringers turn in one column a week and are paid by the article, and are not on the payroll of the sports department of the Tribune.

ment. Plaintiff's brief in response to defendants' motion for summary judgment asserted the memorandum was libel per se and special damages need not be pleaded; the memorandum was not privileged since it was overly broad and not made in good faith; and the issues of malice and truth were fact issues to be determined by a jury which plaintiff had demanded. Defendants filed a brief in answer to plaintiff's brief on defendants' motion· for summary judgment arguing the memorandum was qualifiedly privileged; it was never published; and the statement itself was substantially true.

After considering the briefs and oral arguments of the parties, the trial court granted defendants' motion for summary judgment. No grounds were given for the decision in the order, nor in any statement made by the court during the proceedings. On plaintiff's motion, after the order was entered, the trial court allowed the filing of the depositions, but denied a motion for rehearing.

## I.

Section 57 of the Illinois Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 57), ·provides summary judgment should be granted when "\* \* \* the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there *is no genuine issue as to any material fact* and that the moving party is entitled to a judgment or decree as a matter of law." (Emphasis supplied.) Summary judgment provides a means of disposing of cases with dispatch, but it is a drastic method and should only be allowed when the right of the party to invoke that drastic method is free from doubt—it must not be used to preempt the right to a trial by jury or the right to fully present the factual basis for a case where a material dispute may exist. *Lumbermens Mutual Casualty Co. v. Poths* (2nd Dist. 1968), 104 Ill.App.2d 80, 87, 243 N.E.2d 40; *Roberts v. Dahl* (1st Dist. 1972), 6 Ill.App.3d 395, 405, 286 N.E.2d 51; *Hendricks v. Deterts* (4th Dist. 1973), 13 Ill.App.3d 976, 978, 301 N.E.2d 625.

■■ In reviewing the trial court's granting of summary judgment, we must consider all grounds urged and facts revealed in that court to determine if a genuine issue as to a material fact remained to be determined by a jury and whether defendants were entitled to summary judgment as a matter of law. (*Kamberos v. Schuster* (1st Dist. 1971), 132 Ill.App.2d 392, 398, 270 N.E.2d 182.) As stated in *Lumbermens* at page 88, "[a] summary judgment should then be granted where the moving party's right thereto is clear and free from doubt."

## A.

Plaintiff contends defendants were not entitled to judgment as a matter of law on the defense of qualified privilege because defendants did not prove the memorandum satisfied the criteria required to claim a privilege; and even if the criteria were met, the question of malice was a factual issue to be determined by a jury.

■■ The following elements are essential in establishing the defense of privilege: good faith by the defendant, an interest to be upheld, a statement limited in its scope to that purpose, a proper occasion, and publication in a proper manner and to proper parties only. (*Zeinfeld v. Hayes Freight Lines, Inc.* (1968), 41 Ill.2d 345, 349, 243 N.E.2d 217; *Judge v. Rockford Memorial Hospital* (2nd Dist. 1958), 17 Ill.App.2d 365, 377, 150 N.E.2d 202.) The party asserting the privilege bears the burden of proving the doctrine is applicable to his case. See *Colucci v. Chicago Crime Com.* (1st Dist. 1975), 31 Ill.App.3d 802, 334 N.E.2d 461.

Defendants claimed they acted in good faith. At the time of plaintiff's termination there was an economic recession and a prevailing rumor that the Tribune was about to begin laying off employees; Rollow believed for this reason that an unexplained dismissal of plaintiff would detrimentally affect morale and subsequent work performance within the sports department. Furthermore, defendants asserted there must be a full and frank disclosure concerning employee conduct detrimental to the interests of the company in order to discourage other employees from engaging in similar conduct, and prevent inaccurate and irresponsible newspaper work. Even if these purposes are assumed to be valid, in our opinion defendants must show that the memorandum was issued in a proper manner, to proper parties and in language limited to the duty they sought to uphold.

■■ The memorandum was admittedly posted on a bulletin board and viewed by a person outside the employ of the sports department. When the memorandum was taken down, it was distributed to all persons connected with the sports department, including stringers. It is difficult to determine how notice that plaintiff's termination was due to alcoholism would prevent fear of economic cutbacks within the sports department when stringers were not even on the payroll of that department. Furthermore, in our opinion the language of the memorandum was overly broad. Defendants admit they were not having similar problems with other employees, so a notice stating plaintiff was not dismissed for economic reasons, or that he was dismissed for unsatisfactory performance would have been sufficient to accomplish their alleged pur-

poses. We believe it is not clear on the facts before this court that defendants have established they were entitled to a qualified privilege. ██ Even if the initial conditions for a qualified privilege were met, the qualified privilege loses its character on proof of actual malice. (*Zeinfeld v. Hayes Freight Lines, Inc.*; 33A Ill. L. & Pr. *Slander and Libel* § 52 (1970).) The qualified privilege puts the burden of proving malice on the party claiming injury. (See *Lulay v. Peoria Journal-Star, Inc.* (1966), 34 Ill.2d 112, 115, 214 N.E.2d 746; *Kamberos v. Schuster, supra,* at p. 397.) In the case at bar, plaintiff has pleaded actual malice—"* . * * the Defendants * * * knew, or in the exercise of reasonable care should have known, that the publication was false and defamatory, and in publishing the false and defamatory matter, the Defendants, * * * were activated by actual malice and wrongfully and wilfully intended to injure the Plaintiff." Also, plaintiff asserts in his brief that the language of the memorandum is libelous per se, injuring plaintiff in his profession. If the language is libelous per se malice is imputed from the words themselves. (*Lorillard v. Field Enterprises, Inc.* (1st Dist. 1965), 65 Ill.App.2d 65, 78, 213 N.E.2d 1.) As stated in *Dorin v. Equitable Life Assurance Society of the United States* (7th Cir. 1967), 382 F.2d 73, 76-77, the evidence of malice need not be extrinsic evidence, but might be found in the alleged libel itself. In the instant case the facts before the trial court reveal there was a factual issue to be determined as to whether the memorandum was published maliciously; and therefore the issue should have been submitted to a jury.

In light of the controverted facts on which the question of privilege must be decided and plaintiff's allegation of malice, the summary judgment cannot be sustained on the defense of qualified privilege.

## B.

██ The defense asserted there was no publication because the memo was never shown to anyone outside the sports department. This argument is contradicted by defendant Rollow's deposition which states:

"Rollow: I signed the original [memorandum] and put it on the bulletin board.

It stayed there about three minutes when some person came off the city side, came wandering by and laughed, which irritated me.

Counsel for plaintiff: Do you recall who that person was?

Rollow: No. I told somebody else on the desk about it."

Regardless of whether publication to the members of the sports department constitutes an interoffice communication which would be nonactionable, the memorandum in this case was published beyond the

sports department to persons over whom defendant Rollow had no control. Publication to third persons having no interest in the reasons for which plaintiff was terminated was actionable, and the motion for summary judgment could not be sustained on those grounds.

### C.

The defense of truth was also urged by defendants. The Illinois Constitution of 1970, article I, section 4, states:

> "In trials for libel, both civil and criminal, the truth, when published with good motives and for justifiable ends, shall be a sufficient defense."

While truth is a defense, it must be shown to have been published with good motives for justifiable ends, and if there is a genuine issue of material fact with respect to this defense it should be submitted to a jury.

*Farnsworth v. Tribune Co.* (1969), 43 Ill.2d 286, 290, 253 N.E.2d 408, cited by defendants to support their theory that substantial truth is a sufficient defense, differs from this case. *Farnsworth* stated a constitutional provision[3] "* * * that truth is a defense in a libel action only when published with good motives and for justifiable ends [citation], when applied to defamation of 'public officials' or 'public figures', is incompatible with the Supreme Court's interpretation of the scope of the first amendment guarantees of the Federal constitution." The case at bar does not concern public figures or issues, rather it concerns an employer's publication of a memorandum explaining the termination of his employee—a private person.

■■ In construing the meaning of the words of the memorandum, we note that Illinois follows the innocent construction rule. (*Valentine v. North American Company for Life & Health Insurance* (1974), 60 Ill. 2d 168, 328 N.E.2d 265.) However, as in *Lorillard v. Field Enterprises, Inc.*, 65 Ill.App.2d 65, 76, when the words of the memorandum are given their natural and obvious meaning, we do not see how these words can be given an innocent construction. In *Valentine*, the allegedly slanderous statement was taken from an oral conversation and the court determined when that conversation was considered as a whole the statement that plaintiff was a "lousy agent" was capable of an innocent construction. In the case at bar, the allegedly libelous memorandum is cited in its entirety, with no surrounding circumstances which would make an innocent construction of this memorandum possible.

---

[3] At the time of *Farnsworth* the 1870 Illinois Constitution, article II, section 4, provided limitations on the truth defense. This provision was again reenacted in the 1970 Illinois Constitution as article I, section 4.

■■ All that remains to be resolved is the truth of the statements as applied to plaintiff. Plaintiff has denied the truth of the charges made in the memorandum. While plaintiff admits consuming 14 to 18 bottles of beer a day, an issue remains as to whether this drinking substantiates the charge plaintiff is an alcoholic. That is an issue of fact which can vary from person to person. Issues of fact also remain as to whether the alleged errors and misbehavior of plaintiff during his employment with the defendants constituted inefficiency, lack of punctuality, and unreliability. One of defendants' assistant editors states in a deposition that the plaintiff never failed to turn in an assignment and was only absent from work once during his seven years of employment. Thus genuine issues of material fact do exist.

The cases cited by defendants, *Wilson v. United Press Associations* (1st Dist. 1951), 343 Ill.App. 238, 98 N.E.2d 391, and *Watson v. Herald-Despatch Co.* (3rd Dist. 1921), 221 Ill.App. 557, concerned cases in which the alleged libel was of secondary importance in the context of what was being reported. In the case at bar, the alleged libel constitutes the primary matter being communicated and the truth of that matter has been put in issue. In our opinion the defense of substantial truth does not support the summary judgment.

### D.

Defendants' final defenses alleged in their answer, but not argued in their brief are the guarantees of free speech, the failure to plead special damages and the failure to state a cause of action.

The constitutional guarantees of freedom of speech do not include the right to slander and libel without incurring civil or criminal liability. 11 Ill. L. & Pr. *Constitutional Law* § 177 (1955); Giampietro, *The Constitutional Rules of Defamation, Or It's Libel But Is He Liable?* 64 I.B.J. 10 (1975).

■■ The alleged defamatory memorandum in this matter obviously tends to injure plaintiff in his profession by indicating an unfitness to perform the duties of his employment and therefore could constitute libel per se. (33A Ill. L. & Pr. *Slander and Libel* § 27 (1970).) Failure to plead special damages is not fatal where plaintiff has alleged libel per se. See *Weber v. Woods* (1st Dist. 1975), 31 Ill.App.3d 122, 128, 334 N.E.2d 857.

Plaintiff has properly pleaded an action for libel against defendants. While defendants have raised several defenses, none of these defenses has been so clearly established as to justify the circuit court's allowance of the motion for summary judgment. Genuine issues of material fact remain to be determined, and in our opinion must be resolved by a trial. As stated by Justice Drucker of this court in *Baier v. State Farm Insur-*

*ance Co.* (1st Dist. 1975), 28 Ill.App.3d 917, 920, 329 N.E.2d 543,[4] "[t]he right to summary judgment must be clear beyond question [citation], and when making this determination, the court must construe the pleadings, depositions and affidavits most strictly against the moving party and most liberally in favor of the opponent." Applying this well-established principle in this case, we hold summary judgment should not have been granted.

The decision of the circuit court of Cook County is reversed and the cause is remanded for further proceedings.

Reversed and remanded.

STAMOS and LEIGHTON, JJ., concur.

---

[4] The Illinois Supreme Court allowed a petition for leave to appeal in September, 1975.